UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

ELIZABETH MAGAZINE,
f/k/a ELIZABETH PEKIN,

    Plaintiff,

v.     CASE NO.:

LEGAL BUSINESS SERVICES, LLC, a
Delaware limited liability company,
MOMENTUM FUNDING, LLC, a Delaware
limited liability company,
WESTBURY MANAGEMENT GROUP, LLC,
a Delaware limited liability company, and
PLAINTIFF FUNDING HOLDING, LLC,
a Delaware limited liability company,

    Defendants.

_____/

## COMPLAINT

The Plaintiff, Elizabeth Magazine f/k/a Elizabeth Pekin (hereafter "Magazine"), by and through her undersigned counsel, sues the Defendants, Legal Business Services, LLC, a Delaware limited liability company, Momentum Funding, LLC, a Delaware limited liability company, Westbury Management Group, LLC, a Delaware limited liability company, and Plaintiff Funding Holding, LLC, a Delaware limited liability company (all four defendants collectively, "the Company"), and alleges the following:

### Nature of Action

1.    This is an action for breach of contract.

### Jurisdiction and Venue

2.    Exclusive of interest, attorneys' fees and costs, Magazine's claim for damages exceeds $75,000.00.

3. Magazine is a citizen of Florida.

4. Defendant Legal Business Services, LLC (hereafter "LBS"), is a Delaware limited liability company.

5. Defendant Momentum Funding, LLC, is a Delaware limited liability company.

6. Defendant Westbury Management Group, LLC (hereafter "Westbury"), is a Delaware limited liability company.

7. The Defendant Plaintiff Funding Holding, LLC (hereafter "PFH"), is a Delaware limited liability company.

8. Defendant Momentum Funding, LLC, is officed in Boca Raton, Florida. That is the only connection any defendant has to the state of Florida, based on the information available through public records and known to Magazine.

9. Magazine has a good-faith belief that complete diversity of citizenship exists.

10. Venue is proper pursuant to the contract upon which this action is based.

## Overview of Defendants' Business

11. LBS is a specialty finance company. It provides funding to plaintiffs in personal injury cases, workers' compensation cases, and other contingency fee cases. It also provides law firm financing.

12. LBS is comprised of multiple brands, including:

   a. Law Cash and Momentum Funding, which provide pre- and post-settlement financing for plaintiffs, and

   b. Ardec Funding, which is an attorney and law firm financing product.

13. LBS is affiliated with Defendants Westbury and PFH.

14. LBS owns Momentum Funding, LLC, as detailed below.

**Count I: Breach of Contract**

15. Magazine incorporates her allegations in paragraphs 1 through 14 above.

16. Magazine is an attorney who has more than 17 years of experience in litigation finance. She has a proven track record of success in the industry, and in building companies from inception to sale. She was with Oasis Legal Finance since inception and served as its Executive Director for more than a decade before leaving the company.

17. In December 2014, Magazine formed Empower Operating Company, LLC.

18. Magazine and Empower Operating Company, LLC, executed an employment agreement dated January 5, 2015.

19. In February 2015, Empower Operating Company, LLC, changed its name to Momentum Funding, LLC.

*Introduction of LBS and Identification of Contract Documents*

20. In September 2018, numerous parties entered into a Membership Interest Purchase Agreement, whereby LBS would ultimately acquire ownership of Momentum Funding, LLC.

21. On January 31, 2019, Magazine and Momentum Funding, LLC, executed an Amended and Restated Employment Agreement.

22. The Amended and Restated Employment Agreement superseded and replaced Magazine's employment contract from January 2015.

23. A true and correct copy of the Amended and Restated Employment Agreement is attached hereto as Exhibit "A."

24. Section 1 of the Amended and Restated Employment Agreement specified that Magazine would be employed as President of Momentum Funding, LLC, for a five-year Initial Term.

25. Effective August 6, 2019, LBS's acquisition of Momentum Funding, LLC, was complete by virtue of the execution of a Unit and Asset Purchase Agreement.

26. By contractual amendment dated September 12, 2019, Magazine's Initial Term of employment as President of Momentum Funding, LLC, was extended from five years to seven years.

27. A true and correct copy of the September 2019 amendment is attached hereto as Exhibit "B."

28. Thereafter, in addition to her role as President of Momentum Funding, LLC, Magazine assumed increased responsibility in the management of LBS as the Co-CEO of the company.

29. As a result, in November 2020, Magazine executed a Second Amendment to Employment Agreement.

30. The parties to the Second Amendment to Employment Agreement are Magazine, LBS, Westbury, PFH, and Momentum Funding, LLC.

31. A true and correct copy of the Second Amendment to Employment Agreement is attached hereto as Exhibit "C."

32. Pursuant to the Second Amendment to Employment Agreement, Magazine's Initial Term of employment as President of Momentum Funding was confirmed to be seven years, and established as August 6, 2019, through August 6, 2026.

33. In addition, pursuant to the Second Amendment to Employment Agreement, Magazine agreed to serve as Co-CEO (Sales & Marketing) of LBS as so requested by the LBS Board on an interim basis.

34. Also, pursuant to the Second Amendment to Employment Agreement, Magazine's compensation package was substantially enhanced. As one example, her annual base salary was increased from $467,500 to $520,500, with a guaranteed increase of 4% each year through August 6, 2026.

35. Exhibits A, B, and C hereto comprise the employment agreement upon which this breach of contract action is founded.

**Material Breach**

36. During 2021, the Company substantially altered the terms of Magazine's employment and her role within the organization. Before the changes were implemented, Magazine served as President of Momentum Funding and Co-CEO (Sales & Marketing) of LBS. After the changes were implemented, Magazine was marginalized and relegated to a role that was part marketing strategist, part administrative assistant, and neither managerial nor executive level.

37. These changes constituted a material diminution in Magazine's duties, authority, or responsibilities without her consent, in violation of Section 2 of the employment agreement. By way of example and not limitation:

   a. The Company no longer included Magazine in management meetings or management conference calls.

   b. The Company took away all of Magazine's direct reports. While serving as President of Momentum Funding, Magazine had managed the entire organization of more than 40 employees. When she added the Co-CEO role, she also managed the Law Cash marketing and sales team, which increased her number of direct reports by more than eight.

   c. Managerial employees and Magazine's former direct reports shunned her and ignored her calls and emails.

    d. An outside "branding" consultant treated Magazine as her personal administrative assistant, without any effort by the Company to dissuade the consultant from doing so.

    e. When Magazine attempted to organize and lead a marketing meeting, the Company told her that she no longer has a marketing team and she works alone.

  38. The substantial alterations to Magazine's position and role were documented in an email from Charlie Platt, Esquire, to Magazine on April 30, 2021 (subject line "Update"), and a separate email from Platt to other internal recipients on May 13, 2021 (subject line "Elizabeth's new role"). A true and correct copy of the referenced email attachments are attached hereto as Composite Exhibit "D."

  39. As such, consistent with Section 7(h) of the employment agreement, Magazine submitted written notice to the Company on May 18, 2021, of the existence of Good Reason to terminate her employment agreement if such Good Reason event (the material diminution in duties) is not cured within 30 days.

  40. The 30-day period to cure was subsequently extended to July 2, 2021.

  41. The Company did not cure the Good Reason event.

  42. Instead, the Company terminated Magazine's employment on June 30, 2021.

  43. Magazine was notified of the termination decision at approximately 10:00 p.m. on June 30, 2021, when she received an email with two attachments from the Company's General Counsel. A true and correct copy of the referenced email attachments are attached hereto as Composite Exhibit "E."

  44. The Company purported to terminate Magazine's employment for Cause.

45. However, the Company did not have Cause as defined in Section 7(g) of the employment agreement to terminate Magazine's employment or her employment agreement.

46. In addition, the Company purported to terminate Magazine for Cause without first complying with the mandatory notice-and-cure provision set forth in Section 7(g) of her employment agreement.

47. Magazine's employment agreement with the Company is a valid, enforceable contract.

48. The Company materially breached Magazine's employment agreement by terminating her without Cause and without complying with its payment obligations under Section 7(a)(1) of her employment agreement.

49. Alternatively, the Company materially breached Magazine's employment agreement by not complying with its payment obligations under Section 7(a)(1) following her separation for Good Reason. Magazine invoked Good Reason consistent with Section 7(h) of her employment agreement, she complied with the notice requirement therein, and the Company failed to cure by July 2, 2021.

50. The Company's material breach of the employment agreement has caused Magazine to sustain damages.

51. The damages sustained by Magazine include, but are not limited to:

    a. Non-payment of a gross amount equal to Magazine's Base Salary at the rate in effect on the last day of employment through August 6, 2026 (the "Severance Period"), plus

    b. Non-payment of $125,000 multiplied by the number of years left in the Severance Period with a fraction for any partial years, plus

c.     Non-payment of an amount equal to the monthly health insurance premiums paid by the company on behalf of Magazine as of the effective date of termination multiplied by the number of months in the Severance Period.

52.    Magazine has retained the undersigned counsel to represent her interests in this matter, and she is obligated to pay the undersigned counsel a fee for professional services provided. Magazine has incurred, and will continue to incur, substantial fees and costs to litigate this matter and enforce her contractual rights.

WHEREFORE, Magazine demands judgment against Legal Business Services, LLC, Momentum Funding, LLC, Westbury Management Group, LLC, and Plaintiff Funding Holding, LLC, for damages, prejudgment interest, costs, reasonable legal fees and expenses pursuant to Section 16 of the employment agreement, and such other relief as this Court deems just and proper.

Date:   August 9, 2021.                Respectfully Submitted,

s/Jill S. Schwartz
Jill S. Schwartz, Esquire
Florida Bar No. 0523021
David H. Spalter, Esquire
Florida Bar No. 966347
Jeffrey S. Hammer, Esquire
Florida Bar No. 26181

JILL S. SCHWARTZ & ASSOCIATES, P.A.
655 W. Morse Boulevard, Suite 212
Winter Park, Florida 32789
Telephone:  (407) 647-8911
Facsimile:   (407) 628-4994
jschwartz@schwartzlawfirm.net
dspalter@schwartzlawfirm.net
jhammer@schwartzlawfirm.net

***Pro Hac Vice Admission Pending***